UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBBIE LEE HALL,<br><br>        Plaintiff,<br><br>    v.<br><br>PAUL HUGHES; SCOTT MacLOUD;<br>GARY RIESEN, in his capacity as<br>the Chelan County Prosecuting<br>Attorney; THE CITY OF<br>WENATCHEE; CHELAN COUNTY; and<br>THE BURLINGTON NORTHERN & SANTE<br>FE RAILROAD CO.,<br><br>        Defendants. | NO. CV-03-0040-EFS<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS FOR SUMMARY<br>JUDGMENT, DENYING<br>PLAINTIFF'S MOTION AS MOOT,<br>ENTERING JUDGMENT IN<br>DEFENDANTS' FAVOR, AND<br>CLOSING FILE** |

    Before the Court are Defendants City of Wenatchee and Officer Paul Hughes' Motion for Summary Judgment, (Ct. Rec. 34), Defendants BNSF Railway Company (BNSF) and Scott MacLeod's Motion for Summary Judgment, (Ct. Rec. 37), and Plaintiff's Motion to Exclude Testimony of Expert Witness, (Ct. Rec. 46). Defendants' Motions for Summary Judgment seek dismissal of the case on the grounds that the officers are entitled to qualified immunity protection under 42 U.S.C.§ 1983 because there was probable cause to arrest Mr. Hall for trespass in the second degree. After reviewing the submitted material and applicable case and statutory law, the Court is fully informed, grants Defendants' motions and denies as moot Plaintiff's motion.

ORDER ~ 1

**A.    Procedural Background**

The Defendants' motions were both filed on April 1, 2005. Under Eastern District of Washington Local Rule 7.1(c), a party has eleven calendar days to file a response. However, this Court extends the response deadline for dispositive motions, such as the Defendants' Motions for Summary Judgment, to twenty-one days. The Local Rules warn parties that failure to file a timely memorandum may be considered by the Court as consent to entry of an adverse order.[1] LOCAL RULES 7.1(h)(5) & (h)(b). Plaintiff filed an opposition in the form of an Affidavit of Ryan Edgley, (Ct. Rec. 57), and Response to Defendants' Statements of Material Facts, (Ct. Recs. 58 & 59). However, these documents were not filed until May 6, 2005, over thirty days following the filing of the motions; thus, Plaintiff's opposition was late. In addition, Plaintiff filed his LR 56.1 Statement of Facts Responding to City of Wenatchee and Paul Hughes' LR 56.1 Statement, (Ct. Rec. 72), on May 13, 2005. Mr. Hall, himself, filed a Motion to File Reply, (Ct. Rec. 64), on May 6, 2005, asking the Court to allow him leave to file the untimely opposition papers. Given that Mr. Hall is represented by counsel, the Court strikes his Motion to File Reply, (Ct. Rec. 64), and advises Mr. Hall that while he is represented by counsel all of Plaintiff's filings must be filed by counsel.

Defendants ask the Court to strike Plaintiff's untimely opposition. (Ct. Recs. 55 & 60.) Because Plaintiff failed to comply with the

---

[1] Previously, the Court advised Plaintiff's counsel about the consequences of failing to file a response to a motion in the Order Granting Chelan County's Motion for Summary Judgment, (Ct. Rec. 17).

ORDER ~ 2

deadlines set out in the Court's Scheduling Order and because the Court previously advised Plaintiff's counsel of the consequences of such a failure, the Court will not consider Plaintiffs' Affidavit of Ryan Edgley, (Ct. Rec. 57), Responses to Defendants' Statements of Material Facts, (Ct. Recs. 58 & 59), and Plaintiff's LR 56.1 Statement of Facts Responding to City of Wenatchee and Paul Hughes' LR 56.1 Statement, (Ct. Rec. 72).  However, the Court still reviews the substance of the Defendants' motion in reaching its conclusions below.

**B.   Factual Background[2]**

On July 12, 2001, Robbie Lee Hall was traveling from Othello, Washington to Wenatchee, Washington with Guy Madsen and Kimberly Purdy. Sometime during the day, Mr. Hall took three pills, believed to be Valium, a pain pill, and a nerve pill, from Ms. Purdy. Later, Mr. Hall and Ms. Purdy made their way to Central Washington Hospital to visit Grant Madsen, Sr.  Upon leaving the hospital, Mr. Hall and Ms. Purdy decided to walk down to the Columbia River to go swimming; yet, they did not make it to the river, as apparently, Mr. Hall began feeling the effects of the three pills he took earlier in the day. Consequently, Mr.

---

[2] As a result of Plaintiff's untimely opposition, this "Factual Background" is based on Defendants City of Wenatchee and Paul Hughes' LR 56.1 Statement of Facts, (Ct. Rec. 36), and Defendants BNSF and Scott MacLeod's Specific Facts in Support of Their Motion for Summary Judgment," (Ct. Rec. 41), the declarations and exhibits filed in support of Defendants' motions, and then construing such facts in the light most favorable to Plaintiff.

ORDER ~ 3

Hall "passed out" in a grassy area on BNSF property adjacent to its active mainline tracks.  During his deposition, Mr. Hall stated that he did not wake up or leave the location where he passed out until the next day.

On July 13, 2001, at approximately 8:00 a.m., an individual informed the Wenatchee Police Department (WPD) that a man was sitting in the middle of the BNSF's railroad tracks behind the Red Lion in Wenatchee. WPD officers were immediately assigned by radio to investigate the situation.  BNSF Senior Special Agent Scott MacLeod ("Officer MacLeod"), a commissioned Washington State law enforcement officer, heard the radio transmission while on duty and responded to the situation as well.

Upon arriving at the scene, Officer MacLeod and WPD Officers Homer Ramirez and Shawndra Duke observed Mr. Hall walking south along a dirt road running parallel with the railroad tracks.  After speaking with Mr. Hall, Officer MacLeod cited Mr. Hall for second degree trespassing.  WPD Officer Hughes, who had also arrived, provided Mr. Hall with his Miranda warnings and searched Mr. Hall's bag.  Officer Hughes transported Mr. Hall to the Chelan County Jail for booking.

Mr. Hall filed suit on February 7, 2003, (Ct. Rec. 1), alleging a violation of his civil rights under 42 U.S.C. § 1983 as a result of a wrongful seizure, arrest, search and prosecution.  The Court previously dismissed Chelan County and Gary Riesen.

**C.   Standard**

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The party seeking

ORDER ~ 4

summary judgment must show that there is an absence of disputed issues of material fact and that he is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c). In other words, the moving party has the burden of showing that no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). The court is to view the facts and draw inferences in the manner most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide sufficient evidence supporting his claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213. "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the non[-]moving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). However, the Court has decided not to consider Plaintiff's late opposition; therefore, the Court will view the evidence submitted by the Defendants in the light most favorable to Plaintiff.

**D.   Legal Analysis**

The Defendants argue the officers are entitled to qualified immunity protection because the arrest of Plaintiff was supported by probable cause and the officers acted reasonably and, therefore, the 42 U.S.C. §

ORDER ~ 5

1983 cause of action must be dismissed against the individual officers. Officer Hughes also argues, because he was not the arresting officer, Plaintiff cannot maintain a § 1983 cause of action against him for wrongful arrest or wrongful search. In addition, the City of Wenatchee contends the claims against it must be dismissed because there is no evidence of an illegal city policy or custom.

Section 1983 is a remedial statute which provides an avenue of redress to persons injured by the actions of government which violate federal constitutional rights. The statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff must demonstrate: (1) a person deprived the plaintiff of a federal constitutional or statutory right and (2) that person acted under color of state law. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The defense of qualified immunity has been extended to police officers. *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981). A government official is entitled to qualified immunity if (1) the law governing the conduct was clearly established and (2) under that clearly established law, a

ORDER ~ 6

reasonable official would have believed his conduct to be lawful. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Thompson v. Souza*, 111 F.3d 694, 698 (9th Cir. 1997); *Diruzza v. County of Tehama*, 206 F.3d 1304 (9th Cir. 2000). A law is clearly established if "a reasonable official would understand that what he is doing violates that right." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998). The Supreme Court has indicated that a certain degree of predictability is required:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640. (1987). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryan*, 502 U.S. 224, 229 (1991); *Know v. S.W. Airlines*, 124 F.3d 1103, 1007 (9th Cir. 1997). This law must be clearly established at the time of defendant's acts. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994).

**1. Officer Hughes**

Officer Hughes argues he did not arrest, imprison, or prosecute Mr. Hall and, therefore, he could not have maliciously prosecuted or imprisoned Mr. Hall. The Court finds, for purposes of the qualified immunity analysis, there is sufficient evidence establishing that both Officer Hughes and Officer McLeod arrested Mr. Hall.

An arrest is the taking or seizing of a person either by touching or by an act which indicates an intention to take the individual into

custody and subject the person arrested to the actual control of the person making the arrest, or any deprivation of either liberty of movement or freedom to remain in the place of his lawful choice by one using physical force or conduct. *Kilcup v. McManus*, 64 Wash. 2d 771, 777 (1964). The existence of an arrest depends upon a case-by-case objective evaluation of all of the surrounding circumstances, *Wash. v. Reichenbach*, 153 Wash. 2d 126, 135 (2004), and the test is whether a reasonable detainee under the circumstances would consider himself under custodial arrest. *Wash. v. Radka*, 120 Wash. App. 43, 49 (2004).

Notwithstanding the confusion regarding which officer informed Mr. Hall that he was under arrest for criminal trespass in the second degree, the Court finds the conduct of Officer Hughes equates to an "arrest." The Court agrees merely transporting a suspect may be insufficient to constitute an arrest; however, the Court finds Officer Hughes additional conduct of reading Mr. Hall his Miranda rights, handcuffing him, and then co-signing the incident report, constitutes a "taking or seizing of a person either by touching or by an act which indicates an intention to take the individual into custody and subject the person arrested to the actual control of the person making the arrest, or any deprivation of either liberty of movement or freedom to remain in the place of his lawful choice by one using physical force or conduct." *See Kilcup v. McManus*, 64 Wash. 2d at 777 (1964). Accordingly, the Court considers Mr. Hughes to be an arresting officer and denies in part his motion.

**2.  Clearly Established**

Plaintiff alleges the officers' conduct resulted in an unlawful search and seizure, unlawful arrest, incarceration, and prosecution. The

ORDER ~ 8

first question to be asked in connection with a qualified immunity analysis is whether "the law governing the conduct was clearly established." The Court finds Washington law on July 13, 2001, clearly established that an officer may arrest a person without a warrant for committing a misdemeanor only when the offense is committed in the presence of the officer," R.C.W. § 10.31.100, and an officer must have probable cause to believe that an offense has been committed in order to perform a lawful arrest. *Wash. v. Gluck*, 83 Wash. 2d 424, 426-27 (1974). Probable cause arises when police have knowledge based on reasonably trustworthy information that a person arrested has committed a criminal offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Furthermore, the Court finds the law clearly established that an officer cannot maliciously prosecute an individual. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Lastly, the Court finds the law clearly established that an officer needs probable cause to search a belonging of an individual, absent a search incident to arrest or an inventory search. *Williams v. United States*, 263 F.2d 487 (1959).

### 3. Reasonable Officer

Accordingly, the next question is whether a reasonable officer on July 13, 2001, would believe that grounds existed to arrest Mr. Hall for criminal trespass in the second degree. "A person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree." R.C.W. § 9A.52.080(1). The officers had the burden of proving that Mr. Hall

ORDER ~ 9

committed such a crime. *See Wash. v. R.H. DOB 2/3/79*, 86 Wash. App. 807, 810 (1997).

Section 9A.52.010(3) provides, "[a] person 'enters or remains unlawfully' in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain." This subsection further states:

> A person who enters or remains upon unimproved and apparently unused land, which is neither fenced nor otherwise enclosed in a manner designed to exclude intruders, does so with license and privilege unless notice against trespass is personally communicated to him by the owner of the land or some other authorized person, or unless notice is given by posting in a conspicuous manner. . . A license or privilege to enter or remain on improved and apparently used land that is open to the public at particular times, which is neither fenced nor otherwise enclosed in a manner to exclude intruders, is not a license or privilege to enter or remain on the land at other times if notice of prohibited times of entry is posted in a conspicuous manner.

R.C.W. § 9A.52.010(3).

First, the Court notes Officers MacLeod and Hughes knew that both the railroad track and the dirt road were owned by BNSF; accordingly, the officers could reasonably suspect that Mr. Hall was trespassing when he was seen walking on the dirt road. *See Wash. v. Blair*, 65 Wash. App. 64, 70. Yet, after reviewing the record and photograph submitted, the Court finds a reasonable officer would question whether Mr. Hall understood that he was not licensed to be on the dirt road. The dirt road is bordered by railroad tracks on one side; however, the other side of the road is bordered by homes and businesses, some of which, but not all, have fences between their property and the road. The officers admitted there are no signs and/or gates on this dirt road notifying Mr. Hall that this road was owned by BNSF, and not the city. Accordingly, the Court

finds a reasonable officer would believe that Mr. Hall did not commit criminal trespass in the second degree by simply walking on the dirt road.

According to Officer MacLeod he asked Mr. Hall what he was doing, and Mr. Hall said "he was sitting on the railroad tracks smoking a cigarette." (Ct. Rec. 57, p. 37). However, Mr. Hall disputes that he ever told Officer McLeod this. (Hall Dep., Ct. Rec. 45, p. 3.) Even though the Court is not considering the Plaintiff's untimely submissions, the Court views the evidence in the light most favorable to Plaintiff, the non-moving party. Accordingly, for purposes of this motion, the Court finds Plaintiff did not inform Officer McLeod that he had been sitting on the tracks smoking a cigarette.

However, the officers were aware the WPD received a telephone call from an individual who observed a man sitting or laying on BNSF's tracks. The reliability of this tip was supported when the officers came across Mr. Hall in this general area and appeared to be under the influence of intoxicants, and admitted to have taking three pills. The Court takes judicial notice of the fact that a reasonable individual would understand that railroad tracks are property of another and not open for public use. In addition, Mr. Hall informed the officers that he had slept on a grassy hill, also on the BNSF right-of-way, the previous evening. Accordingly, based on the totality of the circumstances, the Court finds a reasonable officer would have believed Mr. Hall had earlier that morning been sitting/laying on the railroad tracks, knowingly committing trespass; and, under the circumstances, a reasonable officer would have believed probable cause existed to arrest Mr. Hall for criminal trespass in the

1 second degree as the officers. Thus, the officers are entitled to
2 qualified immunity in connection with the arrest.
3    Relatedly, a reasonable officer would have understood that Mr. Hall
4 could be searched incident to arrest and prosecuted for this crime.
5 Accordingly, the Officers are entitled to qualified immunity in
6 connection with the search of Mr. Hall's person and belongings and the
7 prosecution of such crimes. Defendants' motions are granted in part.

### 4. City of Wenatchee

The City of Wenatchee submits it is not liable under § 1983 because it cannot be found liable on a respondeat superior theory, *Monell v. New York City Department of Soc. Servs.*, 426 U.S. 658, 691 (1978), and there is no evidence of a policy or custom of the City of Wenatchee violating Mr. Hall's constitutional rights or others in a similar fashion*, see Gillette v. Delmore*, 1979 F.2d 1342, 1346-67 (9th Cir. 1992). The Court finds there is no evidence supporting a finding (a) that the City of Wenatchee has an express policy that would cause a constitutional deprivation if enforced, (b) the City of Wenatchee has a practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy, or (c) an allegation that a person with final policy-making authority for the City of Wenatchee caused the constitutional injury. *See Lawrence v. Kenosha County*, 391 F.3d 837, 844 (7th Cir. 2004). Accordingly, the Court grants in part the City's motion.

///
///
///

ORDER ~ 12

**E.    Plaintiff's Motion to Exclude Testimony of Expert Witness**

Because the Court grants the Defendants' motions, thereby eliminating Plaintiff's claims, the Court denies as moot Plaintiff's motion.

For the above reasons, **IT IS HEREBY ORDERED:**

1. Mr. Hall's Motion to File Reply, **(Ct. Rec. 64)**, is **STRICKEN**, and

2. Defendants City of Wenatchee and Officer Paul Hughes' Motion for Summary Judgment, **(Ct. Rec. 34)**, is **DENIED IN PART (arresting officer) and GRANTED IN PART (qualified immunity)**

2. Defendants BNSF Railway Company and Scott MacLeod's Motion for Summary Judgment, **(Ct. Rec. 37)**, is **GRANTED.**

3. Judgment is to be entered in the Defendants favor with prejudice.

4. Plaintiff's Motion to Exclude Testimony of Expert Witness, **(Ct. Rec. 46), is DENIED AS MOOT.**

**IT IS SO ORDERED.** The District Court Executive is directed to:

1. Enter this Order
2. Enter Judgment in Defendants favor with prejudice
3. Provide copies of this Order and the Judgment to counsel, and
4. Close this File.

**DATED** this ___16th___ day of May, 2005.

                              s/ Edward F. Shea
                              EDWARD F. SHEA
                        United States District Judge

Q:\Civil\2003\0040.msj.2.frm

ORDER ~ 13